UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAWN J.

v.

FRANK BISIGNANO,
Commissioner of Social Security

NO. 24-CV-6465 SWR

**O P I N I O N**

SCOTT W. REID                                                         DATE: July 9, 2025
UNITED STATES MAGISTRATE JUDGE

Shawn J. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insured Benefits ("DIB") and Supplemental Security Income ("SSI"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that Shawn J.'s request for review should be granted in part, and the matter remanded for a determination of whether work exists in the economy which Shawn J. can perform, taking into account a reasonable limitation in his ability to walk and stand.

I.    *Factual and Procedural Background*

Shawn J. was born on June 25, 1972. Record at 217. He completed high school and one year of college. Record at 256. He worked in the past as a butcher, and as an appliance deliverer. Record at 59-60. On July 13, 2022, he filed an application for DIB. Record at 217. He filed an application for SSI on July 29, 2022. Record at 232. In his applications, he alleged disability since January 1, 2016, on the basis of back problems, a lung disorder, acid reflux, high blood pressure, and depression. Record at 223, 256.

Shawn J.'s applications were denied on October 4, 2022. Record at 72, 73. They were denied again upon reconsideration, on March 9, 2023. Record at 84, 94. Shawn J. then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").

A hearing was held in this case on November 6, 2023. Record at 38. On April 15, 2024, however, the ALJ issued a written decision denying benefits. Record at 17. The Appeals Council denied Shawn J.'s request for review on October 19, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Shawn J. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider

>the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Shawn J. suffered from the severe impairments of lumbar spinal stenosis, and obesity. Record at 20. He found, however, that Shawn J. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Record at 22.

The ALJ determined that Shawn J. retained the RFC to engage in light work, with the following limitations:

>[He] can occasionally operate foot controls with his right lower extremity, and he can frequently operate foot controls with his left lower extremity. The claimant can frequently climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, or kneel. The claimant can frequently crouch or crawl. He can tolerate occasional exposure to unprotected heights, humidity, wetness,

> extreme cold and extreme heat. The claimant can occasionally operate hazardous machinery, and he can occasionally operate a motor vehicle.

Record at 23.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that this RFC permitted Shawn J. to work in such jobs as night cleaner or price marker. Record at 31. He decided, therefore, that Shawn J. was not disabled. Record at 31-2.

In his Request for Review, Shawn J. argues that the ALJ failed to adequately evaluate the medical opinion evidence, resulting in an RFC assessment which did not reflect all of his limitations, specifically in lifting and in standing/walking. He claims that the ALJ cherry-picked positive observations from the medical records, without explaining why they were more credible than other, less positive, observations.

IV.  *Discussion*

The Social Security regulations explain that: "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. In this case, the ALJ did not find Shawn J. capable of the full range of light work, but he did not impose any limitation on his walking or standing. Record at 23. I agree with Shawn J. that the ALJ's finding in this regard is not supported by substantial evidence.

Initially, there is no dispute that Shawn J. suffered from lumbar spinal stenosis and obesity. Record at 20. Nor is it disputed that he underwent at least two spinal surgeries. On May 13, 2014, he underwent surgery to address his back pain at L6-S1, which involved the removal of PEEK (polyetheretherketone) fusion devices which were placed in a 2013 surgery, and the insertion of "a stand-alone interbody device with screw fixation." Record at 311, 317, 857. Years after the surgery, he was still taking strong anti-pain medication, including opioids,

4

daily. *See*, *e.g.*, Record at 353 (as of February 22, 2021, taking extended relief Nucynta (an opioid) and Tramadol). The ALJ acknowledged all of this. Record at 949.

There is also evidence of Shawn J. having an impaired gait. At an orthopedic appointment on March 3, 2015, almost a year after his last back surgery, Shawn J. was noted to have "significant pain behavior" and "difficulty with arising from a seated to the upright position, as well as with transitioning, as well as with prolonged standing." Record at 679. He had "a marked antalgic gait." *Id*. At a cardiologist appointment on August 22, 2017, a slow gait was noted as an abnormality in his physical examination. Record at 380. At a consultative examination which took place on March 11, 2019, Ahmed Kneifati, M.D., noted a normal stance, and observed Shawn J. walking without an assistive device, but with a mild limp on the right side. Record at 886.

The ALJ also relied in part on physical examinations from before the relevant period. Record at 27-8. Physical therapist Jennifer Musser conducted a one-day Functional Capacity Evaluation of Shawn J. on October 23, 2014. Record at 766. She observed that he had a "right lower extremity limp" which increased as he carried more weight during testing. Record at 767. He used his arms on the rail to assist with ascending and descending steps. *Id*. Ms. Musser specifically concluded that "observed strength deficits at the right lower extremity during the Musculo-skeletal exam were consistent with limitations seen during functional testing." Record at 766. Her report included an in-depth discussion of the physiological evidence that Shawn J. was putting forth full effort. Record at 762.

Further, Jeffrey McConnell, M.D., an independent medical examiner in a worker's compensation matter, reported on January 13, 2015, that Shawn J. was "in some discomfort" and ambulated "very slowly with a slightly antalgic gait with limp," although he did not use an assistive device. Record at 311.

Significantly, Dr. Kneifati found that Shawn J. could only walk for a total of two hours in an eight-hour workday, and stand for a total of three hours. Record at 890. This would not be sufficient to perform the full standing/walking requirement for light work. Richard Grunden, M.D., a general practitioner, indicated in an RFC assessment dated October 3, 2023, that Shawn J. could stand/walk for a total of one hour in an eight-hour workday. Record at 1528. Dr. Grunden attributed this extreme limitation to lumbosacral back pain, and periodic right leg pain. *Id*. PT Musser did not quantify Shawn J.'s ability to walk or stand, but wrote that his capacities were generally in the light range. Record at 768. Dr. McConnell, however, found that Shawn J. could stand for four hours and walk for four hours. Record at 314.

The ALJ discounted the limitations on walking and standing in each of these assessments. Some of his reasons for doing so seem to reflect a poor understanding of the medical evidence. Notably, the ALJ found that Dr. Kneifati's assessed limitations were undermined by "other records indicating the claimant could move all extremities." Record at 28, *citing* Record at 1639. Shawn J. has never claimed he had a paralyzed extremity. The mere ability to move both legs and both arms would be a very low bar for a finding that a claimant could walk/stand for six hours per day.

The ALJ also found Dr. Grunden's limitations on Shawn J.'s "sitting, standing, or walking" inconsistent with evidence that "his activities include hiking." Record at 29. However, the December 6, 2016, note cited by the ALJ relates that when Shawn J. tried to "be more active"

6

by hiking, he repeatedly developed significant knee pain. Record at 431. The ALJ found it significant that hiking caused Shawn J. pain in the knee and not the back. Record at 26. However, it is hard to see how evidence of knee pain caused by exertion supported the ALJ's conclusion that Shawn J. could stand and walk at the level required for the full range of light work.

The same December 6, 2016, treatment note reflects that Shawn J. was taking Nucynta 4-5 times a day, as well as 4-6 tabs of Tramadol. *Id*. With no indication in the record that Shawn J. was abusing his medications, it appears that this notably high level of pain control was approved by Dr. Grunden.

Interestingly, Dr. McConnell's findings that Shawn J. could stand for four hours as well as walk for four hours are well within the specification that light work requires the ability to engage in a combination of standing and walking for six hours, and the ALJ could simply have relied upon his findings. Instead, however, the ALJ rejected Dr. McConnell's limitations as "not fully consistent with a subsequent exam a few months later where the claimant had no difficulty ambulating." Record at 28. At this May 14, 2015, examination, however, it was also noted that Shawn J. had reduced strength in his right leg, and positive straight leg testing on the right, indicating the presence of radiculopathy, which could cause right-sided leg pain. Record at 322.

The ALJ also wrote that Dr. McConnell's restrictions were "not consistent with exams after the alleged onset date that indicate the claimant had no major musculoskeletal triggers." Record at 28, *citing* 418, 429. However, the observations of "no major triggers" appear in only two of the numerous treatment notes from Shawn J.'s pain care specialists, who apparently credited his descriptions of pain to a great extent.

7

The remaining medical assessments in the file were authored by the state agency reviewing medical consultants. They are a bit hard to parse. At the initial level, Ethel Hooper, M.D., found on October 3, 2022, that the evidence of record was insufficient to determine the severity of Shawn J.'s impairments. Record at 76. Upon review, John Bertolino, M.D., also found in his March 9, 2023, decision that the evidence was insufficient, writing: "while more likely than not claimant has residual neuromuscular findings similar to the DLI [date last insured], recent evidence does not include comprehensive assessment of gait or strength or ROM or sensation that can be used to assess RFC." Record at 86.

Nevertheless, Dr. Bertolino went on to complete an RFC assessment where he indicated that Shawn J. could stand and walk, in combination, for a total of four hours in an eight-hour workday. Record at 90. As an explanation, he wrote:

> Three lumbar surgical procedures prior to DLI consistent for RLE [right lower extremity] weakness from 2015 to 1/2018 (though muscles weak are variable [sic]) and variable gait assessments. The findings, though variable, are largely consistent with three lumbar surgical procedures and "good and bad days" following the extensive surgeries.

*Id*.

The ALJ accepted many of Dr. Bertolino's RFC findings, but not those regarding the ability to stand and walk:

> The undersigned finds the claimant's standing and walking is not limited to 4 hours as that is not consistent with several exams showing the claimant had good strength and good improvement with his medication. Additionally, the undersigned finds that the instances of mild weakness in the right lower extremity are more consistent with limiting the claimant's operation of foot controls with the right lower extremity.

Record at 29. Undoubtedly, the findings of full muscular strength in the record were relevant to Shawn J.'s ability to walk and stand. *See* Record at 677, 680. However, it is not clear why the ALJ did not accept Dr. Bertolino's view that variable weakness and gait assessments warranted some limitation in walking and standing, given Shawn J.'s surgical history.

Thus, all opining doctors, even Dr. McConnell, found that Shawn J. had some limitation in walking and standing, but the ALJ did not accept any of their views. As a whole, therefore, there is justification for Shawn J.'s argument that the ALJ was "cherry-picking" positive observations from the record in order to avoid finding that he could engage in anything less than the maximum walking and standing required for the performance of light work.

Clearly, as the Commissioner points out, a claimant is not entitled to relief just because he can point to some evidence in the record which is contrary to the ALJ's decision. *Gordon v. Kijakazi*, Civ. A. No. 23-1917, 2024 WL 196482 at *5 (E.D. Pa. Jan. 18, 2024) ("Although a different decision-maker might reach a different conclusion on the same record … the Commissioner's order must be upheld where … it is supported by substantial evidence"). However, where – as here – the ALJ rejects all of the relevant medical information on a certain issue on the basis of assorted positive findings from elsewhere in the record, sometimes on rather dubious grounds, it is impossible to conclude that his decision on that issue is based on substantial evidence.

Shawn J. was closely approaching advanced age when he applied for benefits. Record at 74. He had no skills which were transferable to sedentary work. Record at 61. If his limitations in standing and walking were to reduce his RFC to one for sedentary, unskilled, work, he would be entitled to a finding of disability under Grid Rule 201.14. 20 C.F.R. Part 404, subpart P, app. 2, §201.14.

Nevertheless, this is a case for remand rather than reversal, because it is not clear that Shawn J. is limited to sedentary work. There is considerable authority for finding a claimant capable of a limited range of light work even with some restriction in standing and walking. *Young v. Astrue*, 519 F. App'x 769, 771 (3d Cir. 2013); *Ashley S. v. King*, Civ. A. No. 24-1728,

2025 WL 332545 at *7 at n. 6 (E.D. Pa. Jan. 28, 2025); *Fleming v. Kijakazi*, Civ. A. No. 20-234, 2023 WL 7222034 at *5-6 (W.D. Pa. Nov. 2, 2023); *but see Campbell v. Astrue*, Civ. A. No. 09-5356, 2010 WL 4689521 at *5 (E.D. Pa. Nov. 2, 2010) ("There is … an inherent contradiction between the ALJ's finding that Campbell could 'frequently' lift or carry 10 lbs. – which, pursuant to SSR 83-10, would require Campbell to be on his feet for between approximately 3 to 6 hours of an 8-hour workday – and his finding that Campbell had the capacity to perform work requiring 'standing or walking for no more than one to two hours in an eight hour work day'").

Because of this lack of certainty, I will remand the case to the Agency with directions to (a) determine an RFC with an appropriate limitation in walking and/or standing, after taking written submissions from both parties on the subject; (b) consider the relevance of Grid Rule 201.14, in the event that Shawn J. is found limited to work at the sedentary level; (c) obtain additional vocational evidence, if necessary, to determine the effect of the limitation in walking and/or standing on Shawn J.'s occupational base; and (d) reach a new decision taking into account the new information obtained.

V.     *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be GRANTED in part, and this matter remanded for actions consistent with this Opinion.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE